## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| REBECCA L. MAREZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-05-659-CH |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Ms. Rebecca Marez, brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of Defendant Commissioner's final decision denying Plaintiff's applications for supplemental security income (SSI) benefits under Title XVI of the Social Security Act. Pursuant to 28 U.S.C. § 636(c), the parties have consented to the exercise of jurisdiction over this matter by a United States Magistrate Judge. The Commissioner has answered and filed the administrative record ("AR"), and both parties have briefed their respective positions. For the reasons stated below, the Commissioner's decision is reversed and remanded for further proceedings.

### I.    Procedural History

The procedural history of this case is complicated by the fact that Plaintiff filed two applications for SSI benefits for two different time periods, the proceedings for which overlap. Ultimately, the two SSI applications were consolidated for purposes of the Commissioner's final decision.

Plaintiff filed her first application with a protective filing date of August 3, 1998, alleging an inability to work beginning June 1, 1998, due to back pain resulting from a ruptured disc caused by Plaintiff's involvement in an automobile accident in 1998. The Social Security Administration denied Plaintiff's application initially and on reconsideration. Following Plaintiff's request for a hearing, Administrative Law Judge Mell Lacy (ALJ Lacy) held a *de novo* hearing on January 13, 2000. At the hearing, Plaintiff appeared without an attorney or other representative. Plaintiff, her mother, Judith Marez, and a vocational expert (VE) testified. Among other things, Plaintiff testified that she was 5' 3" tall and weighed 257 pounds. She also testified that she had taken special education classes in school. In a decision dated May 26, 2000, ALJ Lacy determined that Plaintiff was not disabled under the Act. ALJ Lacy found that Plaintiff retained the residual functional capacity (RFC) for light, unskilled work. Plaintiff appealed ALJ Lacy's decision to the Appeals Council.

While Plaintiff's appeal of ALJ Lacy's decision was pending before the Appeals Council, Plaintiff filed a second application for SSI benefits through a non-attorney representative, Patricia Parvin, alleging an onset date of May 27, 2000, the day after ALJ Lacy's decision.[1] Plaintiff alleged disability based on dyslexia, hearing loss, back pain, leg numbness, severe headaches, anxiety attacks, confusion and depression. The second

---

[1] The administrative record contains discrepancies with regard to the protective filing date of Plaintiff's second SSI application. One report, a "Leads/Protective Filing Worksheet," states that a lead was established on June 12, 2000. AR 244. Another report, a Disability Report – Field Office form, cites a protective filing date of June 30, 2000. AR 278. June 30, 2000, is also identified as the filing date on the Disability Determination reports. AR 214-215.

application was also denied initially and on reconsideration, and Plaintiff requested a hearing before an administrative law judge.

Meanwhile, on May 16, 2002, the Appeals Council denied Plaintiff's request for review of ALJ Lacy's decision on her first application.  Plaintiff retained legal counsel and appealed  ALJ Lacy's decision to this Court.

 On July 16, 2002, while Plaintiff's appeal of the Commissioner's final decision on her first application was pending in this Court, Administrative Law Judge H. Maxwell Darks (ALJ Darks) conducted a hearing on Plaintiff's second application for SSI benefits.  ALJ Darks issued an unfavorable decision on March 21, 2003, finding that Plaintiff retained the RFC for sedentary, unskilled work.  Plaintiff appealed ALJ Darks' decision to the Appeals Council.

On June 27, 2003, ALJ Lacy's decision denying Plaintiff's first application for SSI benefits was reversed by this Court and remanded to the Commissioner for further development of the record.  *See Marez v. Barnhart*, No. CIV-02-859-F.[2]

Less than one month later, on July 2, 2003, the Appeals Council granted review of ALJ Darks' decision on Plaintiff's second application for SSI benefits and remanded the case with the following instructions to the ALJ:

---

[2]The federal district judge to whom the appeal had been assigned adopted the Report and Recommendation of Magistrate Judge Robert E. Bacharach who found that ALJ Lacy had failed to adequately develop the record with medical records from two of Plaintiff's treating physicians.  He further found that Plaintiff possibly suffered from obesity and depression and that the record should be further developed concerning these impairments.  *See* Report and Recommendation, Case No. CIV-02-589-F, AR 187-203.

Evaluate all medical source opinions pursuant to the provisions of SSR 96-2p, SSR 96-5p and SSR 96-6p and provide sufficient rationale to resolve any discrepancies.  As appropriate, the Administrative Law Judge may request the medical sources to provide additional evidence and/or further clarification of their opinions about what the claimant can still do despite the impairments.

Give further consideration to the claimant's residual functional capacity and the most she can do despite her impairments and provide appropriate rationale (SSR 96-8p).

If warranted, obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base.

AR 442.[3]  Plaintiff was advised that the ALJ would offer her "the opportunity for a hearing, address the evidence which was submitted with the request for review, and take any further action needed to complete the administrative record and issue a new decision."  *Id.*

Several months later, on October 28, 2003, in accordance with the District Court's June 27, 2003 Order and Judgment, the Appeals Council vacated the final decision of the Commissioner denying Plaintiff's first application for SSI benefits.  The Appeals Council specifically ordered the Administrative Law Judge to whom the case would be assigned to "provide the claimant an opportunity to appear at a hearing, develop the record pursuant to 20 C.F.R. §§ 404.1512-404.1518 and/or 416.912-416.918, and issue a new decision."  AR 206.  The Order of the Appeals Council makes no mention of the pending remand of Plaintiff's second application.

---

[3]The Appeals Council had not yet received the order of this Court reversing and remanding the Commissioner's decision on Plaintiff's first application for SSI benefits, as evidenced by the statement in the Appeals Council's Order that Plaintiff's prior application "is currently pending at the District Court, Western District of Oklahoma."  AR 442.

Both remanded cases were assigned to Administrative Law Judge Kim D. Parrish (ALJ Parrish), and both cases were set for hearing on his docket for March 23, 2004. *See* AR 578. On that day, Plaintiff appeared with her representative, Patricia Parvin. At the beginning of the hearing, ALJ Parrish and Ms. Parvin referred to a brief conversation they had before the hearing about "amending the onset date," and then Ms. Parvin stated on the record, without further explanation, that Ms. Marez was amending the onset date to June 12, 2001. Although not explicit, it appears from the context that they are referring to the second application.[4] Thereafter, ALJ Parrish specifically stated that he was "not going to consolidate that previous case into this one." AR 578. He stated that the focus of the hearing would be "on the second case with the later onset date and later application date." AR 578-579. He further stated that "[d]epending upon what my ruling is in this case, it may clarify and have a reaction on the first application." AR 579. He asked Ms. Parvin whether it was acceptable "to conduct one hearing today on those issues," and she agreed that it was. The hearing on the second case proceeded, and testimony was elicited with the date June 12, 2001, as a point of frequent reference. No other hearing was thereafter conducted on the first case, which

---

[4]June 12, 2001 is also the "onset date" identified during the first administrative hearing on Plaintiff's second application. *See* AR 544. Oddly, however, June 12, 2000 (exactly a year earlier) is the date a leads/protective filing worksheet indicates that a lead was established for Plaintiff's second application. The accuracy and significance of the amended onset date should be clarified on remand.

necessarily would have addressed an earlier alleged onset date (June 1, 1998) and earlier application date (August 3, 1998).[5]

On February 12, 2005, ALJ Parrish issued a decision denying Plaintiff's applications for SSI benefits. Despite having specifically limited the remand hearing to the "second case with the later onset date and later application date," ALJ Parrish consolidated the two SSI applications for decision. He stated, "Both claims will be combined and adjudicated with one decision." AR 170. Plaintiff appealed the decision to this Court.

## II.   **ALJ Parrish's Disability Determination**

In his written decision, ALJ Parrish followed the sequential evaluation process required by 20 C.F.R. § 416.920 and first determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date (June 12, 2001).[6] At step two, the ALJ determined that Plaintiff suffers from severe impairments including borderline intellectual functioning, anxiety disorder, lumbar disc disease, headaches and obesity. At

---

[5]The Court has considered whether the administrative record is subject to the interpretation that the onset dates for both applications were amended to June 12, 2001. Nothing in the administrative record, however, affirmatively indicates that the amended onset date applied to the first application. Ms. Parvin is not identified in the record as Plaintiff's representative in regard to the first application and therefore her authority to announce such an amendment is questionable. Further, such an interpretation would be inconsistent with the ALJ's statements on the record and also inconsistent with the positions that both Plaintiff and the Commissioner have taken in this action. The Court declines to speculate about the off-the-record discussion between ALJ Parrish and Ms. Parvin which may have clarified this issue.

[6]Compounding the confusion in the record regarding the June 12, 2001 "onset date," the Commissioner takes the position in this appeal that the ALJ's identification of June 12, 2001, as the onset date is a "writing error." Commissioner's Brief at 4. The record does not definitively reveal whether the reference is a "writing error," however, and it is not the proper role of the Court to guess the ALJ's intent.

step three, the ALJ found no impairment or combination of impairments that meets or equals the criteria of any listed impairment described in the regulations. The ALJ then concluded at step four that Plaintiff retains the residual functional capacity to perform a significant range of light work. Relying on the testimony of the VE, the ALJ found at step five that Plaintiff is capable of performing the job requirements of final garment assembler, of assembler, and of housekeeper. The ALJ therefore concluded that Plaintiff is not disabled.

III.   **Plaintiff's Claims**

Plaintiff contends that ALJ Parrish erred in failing to properly adjudicate the time period associated with the 1998 application and to afford Plaintiff a hearing on the 1998 application. She further contends that ALJ Parrish failed to properly consider the effects of obesity as required by law and as previously ordered by this Court and that, in fact, the ALJ improperly relied on Plaintiff's failure to lose weight as a ground to discredit her. Finally, Plaintiff claims that the step-five finding of ALJ Parrish is not supported by substantial evidence because the VE's description of jobs, upon which the ALJ relied, varied significantly from the jobs as described in the Dictionary of Occupational Titles (DOT).

IV.   **Standard of Review**

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). "[S]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760

(10th Cir. 2003). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). A court considers whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Hackett*, 395 F.3d at 1172 (quotations and citations omitted).

## V.   Analysis

### A.   Issues Regarding the Remand Hearing for Plaintiff's First Application

Plaintiff contends that by using the onset date of June 12, 2001, and focusing the administrative remand hearing on the "second case with the later onset date and the later application date," ALJ Parrish violated Plaintiff's due process rights by effectively depriving Plaintiff of a remand hearing on the 1998 application.

"Social security hearings are subject to procedural due process considerations." *Yount v. Barnhart*, 416 F.3d 1233, 1235 (10th Cir. 2005) (citing *Allison v. Heckler*, 711 F.2d 145, 147 (10th Cir. 1983)). For example, the Tenth Circuit has held that "[a]n ALJ's use of a post-hearing medical report constitutes a denial of due process because the applicant is not given the opportunity to cross-examine the physician or to rebut the report." *Allison*, 711 F.2d at 147.

Based on the Report and Recommendation of Judge Bacharach, this Court reversed ALJ Lacy's decision and remanded the case to the Appeals Council which, in turn, remanded

8

the case to an ALJ for a new administrative hearing on the 1998 application, during which

Plaintiff would be given the opportunity to be heard and to further develop the record.

A remand hearing, when one is ordered, is not merely a formality.[7]   Under the

regulations, the ALJ may consider on remand "[a]ny issues relating to [a claimant's] claim

. . . whether or not they were raised in the administrative proceedings leading to the final

decision[.]" 20 C.F.R. § 416.1483.   Here, Plaintiff lost the opportunity to be heard and to

present new issues and evidence in support of her 1998 application.  By proceeding with the

remand hearing only on Plaintiff's second application, ALJ Parrish effectively denied

Plaintiff a remand hearing on her 1998 application in contravention of the directions of the

Appeals Council acting in response to a remand from the district court.  Despite the lack of

a hearing, the ALJ's ultimate finding specifically adjudicated the 1998 application:

> It is the decision of the Administrative Law Judge that, based on the application filed on August 3, 1998, the claimant is not eligible for Supplemental Security Income payments under Sections 1602 and 1614(a)(3)(A) of the Social Security Act.

AR 181-182.  This Court states no opinion as to whether a remand hearing on the 1998

application would change the final decision of the Commissioner, but the legal error in not

providing the hearing requires reversal.

---

[7]The Appeals Council is not required to order an administrative hearing when a case is remanded by a federal court to the Commissioner for further consideration.  Acting on behalf of the Commissioner, the Appeals Council "may make a decision, or it may remand the case to an administrative law judge with instructions to take action and issue a decision or return the case to the Appeals Council with a recommended decision."  20 C.F.R. § 416.1483.

B.      **The ALJ's Consideration of Plaintiff's Obesity**

In the hearing before ALJ Lacy, Plaintiff testified that she weighed 257 pounds, over 100 pounds more than her normal weight.  AR 31.  In the Report and Recommendation regarding ALJ Lacy's decision on Plaintiff's 1998 application, Judge Bacharach stated that he could not "gauge the impact of the judge's limited inquiry [regarding obesity] because of [the ALJ's] failure to develop the record with respect to treatment by Doctors Jones and Stockard."  AR 194.  Judge Bacharach further stated that under the regulations, an ALJ must consider whether a plaintiff's obesity has contributed to any functional limitations.  *Id. See also* SSR 02-1p.

ALJ Parrish stated that "[e]xamination reveals the claimant is morbidly obese; however, this does not limit her functionally.  She can ambulate effectively and perform fine and gross movements effectively for a sustained period."  AR 171.  Ultimately, ALJ Parrish determined that Plaintiff can perform "a wide range of light work."  AR 181.[8]  The ALJ cited evidence in the record supporting his contention that Plaintiff's obesity does not limit her physical ability to work:

---

[8] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. § 404.1567 (b).

> Physical examinations have shown very little in the way of physicial functional limitations.   She had no joint deformities, redness or swelling.   The lumbosacral spine flexed to 75 [degrees].   She had mild decreased range of motion of the hips and knees, but the other joints had normal range of motion. Cervical MRI scan was negative.   There were no neurological defects.   Her gait is normal.

AR 177.   Additionally, the ALJ's RFC finding relies in part on Plaintiff's reported daily activities:

> The claimant's activities of daily living are not significantly limited.   She testified at the hearing that she gets her son ready for school, does light housework, washes clothes, cleans up after her son, and does daily exercise for her back, walking through the neighborhood.

AR 177.   As a general rule, "evidence that a claimant engages in limited activities . . . does not establish that the claimant can engage in light or sedentary work activity." *Thompson v. Sullivan*, 987 F.2d 1482, 1491 (10th Cir. 1993) (quotation omitted).   *See also Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1988) (claimant's testimony that he camped out frequently, hunted and fished, had no difficulties driving his standard-shift utility vehicle, and occasionally mowed the lawn did not establish that the claimant could engage in light or sedentary work activity).   Nevertheless, Plaintiff's reported daily activities provide some support for the ALJ's RFC finding.

The only evidence to the contrary is the report of the medical consultant who examined Plaintiff on March 16, 2001.   The medical consultant stated that Plaintiff was limited to sedentary work and that  "[p]ain and obesity do affect the [RFC]."   AR 364-365.[9]

---

[9] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined (continued...)

11

"A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation and citation omitted). In this case, the statement of the medical consultant does not overwhelm the other reports of physical examinations which showed little evidence of physical limitations.

Moreover, the ALJ did not, as Plaintiff states, improperly rely upon her failure to lose weight to discredit her subjective complaints. Rather, the ALJ stated that Plaintiff is "very obese" and noted that her weight had steadily increased from March 1999 to December 2002. The ALJ then noted that according to her testimony, Plaintiff had recently lost about 30 pounds. AR 177. The ALJ's observation that Plaintiff's weight loss "will more than likely improve her medical condition" does not suggest that he is discounting her testimony based on her history of obesity. In sum, the evidence upon which the ALJ relied in determining the effect of Plaintiff's obesity on Plaintiff's physical RFC is substantial and is not overwhelmed by other evidence in the record.

## C.     The ALJ's Step Five Findings

Plaintiff also challenges the ALJ's step-five findings that Plaintiff can perform the jobs of "final garment assembler," "assembler," and "housekeeper." Plaintiff states that these jobs, as identified by the VE, are different from the jobs as identified in the DOT. Plaintiff

---

[9](...continued)
as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567 (a).

states that the ALJ's failure to investigate this inconsistency requires reversal of the

Commissioner's decision.

When an ALJ reaches step five of the sequential analysis, the burden shifts to the

Commissioner to show that a claimant has retained sufficient RFC to perform work in the

national economy, given the claimant's age, education and work experience.  *See Hackett*,

395 F.3d at 1171.  The ALJ is required to make a number of findings:

> [T]he ALJ must find that the claimant retains a particular exertional capacity,
> decide whether the claimant has acquired transferable skills, identify specific
> jobs that the claimant can perform with the restrictions the ALJ has found the
> claimant to have, and verify that the jobs the claimant can do exist in
> significant numbers in the regional or national economies.

*Haddock v. Apfel*, 196 F.3d 1084, 1088-1089 (10th Cir. 1999).  Each of these findings must

be supported by substantial evidence.  *Id.* at 1089.  An ALJ need not, however, identify more

than one job a claimant can do, so long as that job exists in significant numbers in the

regional or national economy.  *See* 20 C.F.R. § 404.1566(b) ("Work exists in the national

economy [for step-five purposes] when there is a significant number of jobs (in one or more

occupations) having requirements which [the claimant is] able to meet[.]").  *See also Evans

v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995) (To find a claimant is not disabled, the ALJ must

"identify, and establish the claimant's ability to perform, some specific occupation(s) which

– however few in themselves – encompass a significant number of available jobs.").

When the testimony of a VE regarding the requirements of a particular job is at odds

with the description of the requirements for that job listed in the DOT, the testimony of the

VE cannot be considered "substantial evidence."   In *Haddock*, the ALJ found the plaintiff

to retain an RFC for sedentary work.  Of the four jobs "summarily identified" by the VE, only one – that of payroll clerk – is described in the DOT as sedentary.  The ALJ compounded the error by failing to ask the VE to specify how many payroll clerk jobs exist. *Id.*  The Tenth Circuit reversed and remanded the case because the ALJ's step five determinations were not supported by substantial evidence.  The Tenth Circuit noted that "the agency accepts the [DOT's] definitions as reliable evidence at step four of the 'functional demands and job duties' of a claimants's past job[.]" *Id.* at 1090.  For this reason, the Court found that "[i]t would be anomalous to read the agency's regulations to allow an ALJ to disregard the [DOT] at step five – where the ALJ bears the burden – when the ALJ is allowed to rely conclusively on essentially the same information from the [DOT] at step four." *Id.* The court held, therefore, that "the ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Id.* at 1091.  *See also* SSR 00-4p, 2000 WL 1898704 at *4 (explaining that "[w]hen a VE . . . provides evidence about the requirements of a job or occupation, the [ALJ] has an affirmative responsibility to ask about any possible conflict between that VE . . . evidence and information provided in the DOT").

In this case, the ALJ determined that Plaintiff's ability to perform light work is limited by non-exertional impairments:

> [Plaintiff] is limited in that she has the ability to remember and understand very short and simple instructions and carry out simple, routine tasks. Regarding her sustained concentration and persistence, she has the ability to perform simple, unskilled one to two-step repetitive tasks.  She also requires

to work in relative isolation with limited contact with peers and supervisors and the general public.  Regarding stress limitation, she is able to perform routine, repetitive, low-stress work.

AR 179.

The DOT identifies six levels of reasoning development applicable to job titles.  Level One is the lowest of these and is defined as follows:

Apply commonsense understanding to carry out simple one or two-step instructions.  Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

DOT Vol. II, Appendix C.  Level One reasoning development closely matches Plaintiff's mental RFC as determined by ALJ Parrish.

The job of Final Garment Assembler identified by the VE is listed in the DOT at 789.687-046.  It requires Level Two reasoning defined as follows:

Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions.  Deal with problems involving a few concrete variables in or from standardized situations.

*Id.*  The Plaintiff's RFC, however, is limited to "repetitive" tasks.  A worker with Level One reasoning skills can perform work which presents "standardized situations" and better describes Plaintiff's ability to perform "repetitive" tasks than  Level Two reasoning, which requires a worker to face "a few concrete variables in or from standardized situations."  The difference is enough to cast doubt on the ALJ's finding that Plaintiff could perform this job in light of her mental RFC.

The VE also identified Assembler, specifically Sandal Parts Assembler, as a job Plaintiff could do.  This job also requires Level Two reasoning and therefore suffers from the same defect as the Final Assembler.

Finally, the VE identified the "general category" of "janitors, cleaners, housekeeping cleaner."  AR 598.  According to the DOT, the group of occupations under the title of "Janitors" includes occupations "concerned with cleaning buildings and keeping them in good repair; performing minor painting, plumbing, and carpentry tasks; and firing and tending furnaces and boilers."  DOT § 382.  It appears from the record that Plaintiff lacks the skills to perform several of the functions described in the DOT.  Plaintiff speculates that the VE might have been referring to the occupation entitled "Cleaner, Housekeeping" listed at § 323.687-014.  This occupation is classified as light and the reasoning level is Level One.  This job alone may represent work existing in significant numbers in the national economy that Plaintiff could perform.  But it is not clear that this occupational listing is the listing to which the VE was referring.  Therefore, this Court cannot determine whether there is a significant number of these jobs in the regional or national economies.  If the ALJ solicits the testimony of a VE on remand, the ALJ should explore the relevant occupational listings in the DOT with the VE to determine whether the job demands identified in the DOT are the same as the job demands described by the VE.

The decision of the Commissioner is REVERSED and REMANDED for further proceedings consistent with this opinion.

ENTERED this __20th__ day of July, 2006.

VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE